Our next case for argument this morning is Shaw v. Illinois SportService, Inc. Mr. Harper. Mr. Harper. Good morning, Your Honors. May it please the Court. This case arrives at the Court on a ruling on summary judgment. The judgment should be reversed and remanded because the movement failed to meet its burden. Here there's a genuine dispute regarding the material fact. That fact is, what are the essential functions that Mr. Shaw would have had to perform and which the ported position that he applied to is governed by? This issue was simply a motion like any other. I realize it's summary judgment. I realize there's a tendency to view summary judgment sometimes differently than other motions, but it's simply a motion. The movement has a burden. The movement has to satisfy its burden. The burden is set forth under Rule 56. It says the Court shall grant summary judgment if the movement shows that there's no genuine dispute as to any material fact and the movement is entitled to judgment as a matter of law. But if you're hanging this whole thing on the affidavit that was furnished by the person, I don't see where there's a clear statement in that affidavit that Mr. Shaw is able to perform with or without an accommodation. You're not supposed to have to have an accommodation that amounts to another person by your side all the time. It's just very vague about what kind of training the expert thinks he can do, how long that will take. How can he read and interpret the delivery forms and purchase orders? How can he perform the basic arithmetic that he needs to count the inventory? I just don't see where in this record there's any evidence that a rational trier of fact could credit that would satisfy those requirements. It's a very sad case. I mean, it's terribly sad, but that doesn't necessarily mean that sports service has to hire him. What you're on is referring to the expert's affidavit. Well, I thought that was what you were complaining wasn't fully taken into account. Because otherwise, you know, the district judge assesses the evidence and says there's just no rational jury could find. Actually, the district judge gives you the benefit of the doubt on the eligibility criteria, which I think could be argued about too. But let's put that to one side and look at his ability to perform the basic functions of the job. And even that, I just don't see where's the evidence. Well, Your Honor, actually, the position that I was taking starts at a different point. Your Honor is moving into the analysis of whether Mr. Shaw can perform the functions. And my analysis actually begins a step earlier. What I'm saying is that there's actually a dispute about what the essential functions are. And so with that dispute, this isn't simply a material fact, what the essential functions are, but it's a dispositive fact. Under the statute, it is the test that the court will have to apply. The statute under the Americans with Disabilities Act requires the analysis of whether the employee can perform the essential functions with or without an accommodation. In order to apply that test, we have to know what the essential functions are. And so identifying the essential functions isn't simply a material fact. It is dispositive. I might go so far as to say that it is perhaps the sole dispositive fact. And yet that is the fact that here it's not only in dispute. It's not only that there's a fact issue regarding that fact, but the fact issue was created by Sports Service's own evidence. It's not like we hired an expert who came up with some theory that there ought to be an analysis of the essential functions that differs from what Sports Service's job description says. No, I just don't—be concrete. What job function—I mean, this is part of your theory that there are really two jobs, not one? Yes. Well, it's not my theory. It comes from Sports Service. Well, suppose there are two jobs. What can he—where's the dispute? Your Honor, I think Your Honor was about to ask what functions could he perform? He has to be able to perform either one or the other job on your theory of it being two jobs. Now, there's plenty of evidence that Sports Service—plus regards this as just one job where you assign people to different duties from time to time. But let's suppose—let's have it your way. Let's suppose it's two jobs. Where's the evidence that he can perform either one of them? Well, Your Honor, I have two answers to that question. First, if the court agrees with me regarding having it my way and assuming that he— I'm just trying to explore your position. I'm not making any statements. No, no. I'm not saying that Your Honor is. But I'm saying if my position is assumed to be correct, then it must also be assumed that Sports Service has failed to meet its burden and has been moving. I don't see that. I mean, because your position must have some theory about what are the essential functions of the warehouse-based job and what are the essential functions of the stands, you know, the different places throughout the facility. Yes, Your Honor. Well, the record—there are the two job assignments. They have different essential functions except that they both share the function of keeping the work area neat and clean. And again, it's not that our expert decided that he can perform that, but Sports Service itself conceded that point. The interviewer during— But that's not the sum total of what you have to do in either of those locations. Correct. There are other essential functions that apply to both work areas, but this brings me back to my initial point that the court cannot begin the analysis without identifying what those essential functions are, and that is the issue that Sports Service's own witnesses put into dispute. The commissary manager for Sports Service— I mean, I think Sports Service has overwhelming evidence that there's actually only one job. Well, Your Honor, here's the dispute. The job description—Sports Service maintains that what the job description says applies to all— Right. Because they cross-assign, because somebody will be doing one thing and then maybe a few weeks later they need them doing something else. Yes, and so Sports Service insists that the essential functions apply to both positions. However, Sports Service's commissary manager points to these facts. While the job description says that one of the functions is to deliver food and beverages throughout the facility, the commissary manager says that only applies to concession ports. It does not apply to warehouse ports. Right. When you're working in the concession, that's what you're doing, and when you're working in the warehouse, you're counting up the boxes, which you can't do, apparently. But, Your Honor, the assignments don't change randomly. It isn't a system where the employee comes to work one day with one assignment and then maybe later during the day they're given a different assignment or maybe the next day they're given a different assignment. Instead, what happens is there's continuity of the assignments. When an employee is given the warehouse porter assignment, they spend all day inside the warehouse. And when they go home and then they come back to work the next day, they… Well, I'll just point you to page 18 of the district court's opinion. He says, first, there is no evidence to support the contention that there are two distinct porter roles. Moreover, based on Washington's declaration, ISS appears to assign this function, that is, to deliver the stuff, regardless of whether they are performing a concession assignment or a warehouse assignment, although it's most frequently a concession. Anyway, I mean, that… Your Honor, we… Maybe the district judge was wrong about that, but that's what the district judge finds. We respectfully disagree with the district court. We urge this court not to make that same mistake. There is evidence in the record of these differences, and it comes from support services' own witnesses. When the assignments take place, porters who are assigned to the warehouse, they can't leave the warehouse during their assignment. But, counsel, you don't contest the fact that the employer actually does cross-assign, right? You don't contest the fact that as part of the way they manage porters and scheduling porters, if they need a porter in concession and you're working in a warehouse, they can ask you to go work in a warehouse that day. Your Honor, it is possible that they could do that, but there's no evidence that that's what they do. I don't think that's right. There's nothing in the record… Your Honor, is it Mr. Washington, the person who was, in fact, a porter for quite a while? He testifies that they do both. No, no. It's not whether they do both. It's whether the assignments change on the same day. Well, not in 15 minutes, you know, but if it's Monday, you're in the warehouse, and they realize on Tuesday they need you in a concession, doesn't that mean there's a cross-assignment? Your Honor, yes. It would mean there's a cross-assignment, but the cross-assignments don't occur the way Your Honor is describing them. There's a continuity. I think we have your point. Thank you, Mr. Hart. I see my time has expired. Thank you, Your Honor. Ms. Martin. Good morning. May it please the Court, Ms. DeMar, on behalf of Appellee, Illinois Sports Service, we're asking the Court to affirm summary judgment because Mr. Shaw could not and cannot establish that he's a qualified individual for the purpose of this hearing. The purpose of the Americans with Disabilities Act. The fundamental issue in this appeal is whether companies should hire an individual who is not qualified for the job. The district court correctly held that there is no such obligation, and because there's no genuine dispute, Mr. Shaw is not qualified for the porter position. I'd like to address his— Does it matter whether there are one or two porter positions in your view? Not at all, because when you look at what the porters do on a daily basis, if you're a porter in the warehouse, you have to read and interpret warehouse delivery forms and the forms and the product that's coming off the trucks and shipment. So if you're in the warehouse, you're doing that. If you are assigned to do the concession deliveries, you're reading inventory labels, delivery forms, and you're reading the product. And it's undisputed in the record that Mr. Shaw cannot do those two functions. So whether it's one or two, it doesn't matter because he can't perform the essential functions. And it should be noted that these two labels of a concession porter and a warehouse porter, those only came up in the deposition when counsel suggested, well, may I call it a concession porter when you're describing the assignment. It didn't come from Illinois Sports Service, because you're correct. Mr. Washington said if you're assigned to the warehouse, that's what you're doing that day, but you could be working in the concession if somebody calls in and they're sick or something to that effect. So as to the essential functions, I don't think there's a dispute as to what they are, and every porter is required to do them during their shift. Every porter has to read. Every porter has to interpret forms and be able to look at the documents and interpret them. What we know about Mr. Shaw's limitations, unfortunately, which is undisputed in the record, he has severe impairments. You can look at the testimony of his own mother. You can look at the testimony of Ms. Hoban, a speech pathologist who worked with him for years, but at the time that he was applying, and she gave these examples. The porter is required to go to the warehouse and look at 500 different types of products and read the labels and read these forms and be able to know the difference between 10 different types of Goose Island beers. The record established that when Mr. Shaw is shown six basic functional words like comb, shoe, brush, and asked to point to the word brush, he cannot do that accurately all the time because of his impairment. Similarly, when you look at pictures, he's shown six functional pictures of a comb, brush, toilet, and asked, which one would you use if you have to go to the bathroom? He couldn't point to the toilet as being the correct object. These things are undisputed in the record. So even if you take everything that the mother says that he's capable of doing at his house, you still need to look at the other evidence in the record from the medical providers, from the treating physicians, and from her own statements to the Social Security Administration regarding the disability benefits. And when you look at it whole, it's very clear, as the district court found, that there's no genuine dispute. It has to be a genuine and a material dispute. The fact that he can unload the dishwasher at home does not create a genuine dispute as to whether he is qualified under the Americans with Disabilities Act. The second factor, and we addressed it in a reverse way, but it's a two-step analysis as to whether somebody is qualified under the American Disabilities Act. And the plaintiff has the burden of establishing it. The first step before you even get to essential functions is that you have to prove that you have the requisite skills. And plaintiff argued that there is a dispute as to what skills are required. It's undisputed that porters have to be able to read and interpret forms. It is in the job description. It's undisputed that porters have to do this every single day in their jobs. And it's not disputed. It's in their opening brief that Mr. Shaw can't do this. Because he doesn't have the requisite skills for the position, summary judgment can be granted and affirmed just on that first step, and you don't even have to get to the question of essential functions. And what we're asking— The district court gave him the benefit of the doubt more or less in that first step, didn't he? Yes, and I think that's a good point. I think the district court gave Mr. Shaw a lot of benefits of the doubt. A lot of the arguments that we made about what the expert was saying, the court considered all of that. When it came to whether he had the skills, the district court's opinion didn't specifically address, like, the skill of reading, so I think the court overlooked it. But you're right. He gave them the benefit of the doubt but still found that he wasn't qualified under the Americans with Disabilities Act. I point to the skill of not being able to read and interpret as being one of the fundamental skills because it's so obvious that he isn't capable of doing it. There's other things that the record demonstrates that he's not able to do. So reporters are required to report repairs. So if they go into a concession stand, they have to fill out a log and monitor the temperature gauges of the freezer or the refrigerator. They do that in the concession stands. They do that in the warehouse. If Mr. Shaw does not do that correctly and he's not able to do it, there are important ramifications that happen. There's spoiled product that can happen because of it. So it's an important and essential function of why the company is requiring it, and the plaintiff hasn't established that he's able to perform those functions. So for these reasons, one, that he is not qualified and doesn't have the skills, two, because even if you accept his two-porter argument, he still can't perform the essential functions, so we're asking the court to affirm summary judgment. Thank you. Thank you very much, counsel. The case is taken under advisement.